# SUPREME JUDICIAL COURT,

IN THE

## COUNTY OF CUMBERLAND,

ARGUED APRIL TERM, 1848.

28 9
98 573

JAMES C. HILL *versus* JEREMIAH BAKER & *al.*

All the owners of the milldam complained of, should be joined in a complaint to obtain damages by the flowing of the land of the complainant by such dam, under the provisions of Rev. Stat. c. 126. And if they are not all joined, the complaint will be dismissed, if the nonjoinder be pleaded in abatement.

A COMPLAINT, signed by James C. Hill, of which the following is a copy, was filed, and notice ordered thereon.

"STATE OF MAINE.

"Cumberland ss. At the Western District Court, begun and held at Portland, within and for said county of Cumberland, on the third Tuesday of June, being the fifteenth day of said month, Anno Domini, 1847, by the Hon. Daniel Goodenow, Judge : —

"The petition of James C. Hill of North Yarmouth, in the county of Cumberland, merchant, showing and praying that a summons may issue in due form of law to Jeremiah Baker and Silvanus Blanchard, of said North Yarmouth, yeomen, for that said complainant, at said North Yarmouth, on the 10th day of February, in the year 1844, and long before and ever since was and is seized in his demesne as of fee, and actually possessed

VOL. XV.        2

of a certain piece of meadow land, situate in said North Yarmouth, and containing four acres more or less, bounded as follows, to wit : — northerly by the county road, leading from Pownal to Portland, easterly and southerly by Royall's river and land of Thomas Pratt and Nathaniel G. Marston. But the respondents being tenants in common of a certain grist-mill, erected on their land below said meadow, on said Royall's river, for the purpose of raising a suitable head of water to operate said mill, have ever since said tenth day of February, maintained and kept up and still continue to keep up and maintain a high dam extending from the western shore of said river, into and across the same, and by means thereof have caused the water of said river to overflow and drown the complainant's land aforesaid, whereby said meadow has been rendered useless, and the complainant has been greatly impeded in his operations in widening and deepening a certain ancient channel through said meadow, called the Forge Stream.

" Wherefore the said James C. Hill prays that proper notice may issue, and the respondents be held to answer to the complainant according to the statute, in such case made and provided.

" Dated at North Yarmouth, this tenth day of February, in the year eighteen hundred and forty-seven."

Baker and Blanchard entered their appearance in Court, and filed a plea of which a copy follows : —

" The said Jeremiah Baker and Silvanus Blanchard come, c., when, &c., and pray judgment of the complaint aforesaid, and say, that they are part owners of the dam mentioned in the complaint aforesaid, and of the grist mill therein described, as tenants in common with one Benjamin Mitchell and one Samuel P. Baker, who are also part owners of the same, and that the injury complained of in the plaintiff's complaint, if any, was caused by the dam erected by the respondents jointly with the said Benjamin Mitchell and said Samuel P. Baker, and for which the said Mitchell and Baker are jointly responsible with the respondents ; and this they are ready to verify. Wherefore because the said Benjamin Mitchell and

Samuel P. Baker are not named in said complaint, the said Jeremiah Baker and Silvanus Blanchard pray that the same may be quashed and for their costs.

"By their attorney, Philip Eastman."

To this plea the complainant demurred generally; and the respondents joined in demurrer.

The case was argued in writing.

*B. Freeman* for the complainant.

The question raised by the pleadings in this case is, whether in the process given by the 126th chap. Rev. Stat. for the ascertainment of damages by flowage, the complainant is bound to join all the owners of the mill, for the use of which the head of water causing the injury was raised.

For the true interpretation of all statutes, four things are to be considered : — What was the common law before the act : — What was the mischief to be remedied : — What remedy the legislature has provided to cure the defects, and the true reason of the remedy. 1 Kent, 464.

At common law, any person might erect and maintain a water mill on his own land and raise a head of water for working it ; but if he thereby injured the land of another, the injured party might recover his damages by an action in form *ex delicto*. And if the injury was caused by the joint act of several individuals, the injured party had his election, to sue all or some of the parties jointly, or one of them separately, because a tort is in its nature the separate act of each individual. 1 Chitty's Plead. 86, 87.

The mischief to be remedied, was doubtless the multiplicity of suits to which the owners of mills were subjected for the recovery of damages, incident to raising a suitable head of water for working them. The statute remedies the mischief by substituting for the process at common law, the process therein provided, which allows the owner or occupant of the mill to pay to the owner of the land flowed, the estimated yearly damages, and takes from the land owner, his action at common law. The true reason of the remedy may be found in the fact that the statute encourages the erection of mills by re-

lieving their owners from frequent suits, without abridging the land owner's remedy for injuries sustained thereby. The several liability of the joint owners of mills was not the mischief to be remedied; and it cannot be presumed that the legislature intended to make any innovation upon the common law, further than the case absolutely required. 1 Kent, 464.

The statute extends its protection to mill owners on certain conditions. It does not lessen the obligation of individuals so to use their own as not to injure another, but allows an act to be done, which is in its nature a tort, under certain conditions and regulations, subject to which it may well be denominated a regulated tort; and when done by several persons jointly should be regarded in practice, as it is in its nature, several as well as joint. It might be premised of the process by statute, that it should be as certain in practice as the process at common law for which it is substituted. And had it required the complainant to join all the owners of the mill complained of, in the preliminary process for the ascertainment of his damages, it might well have been objected to as a hardship upon both parties, subjecting the respondents to unnecessary cost, and taking from the complainant a common law right, highly beneficial to him, and in no way injurious to the respondents. If it was the intention of the legislature to make mill owners jointly and not severally liable to be complained of, why was the injured party allowed to complain of the occupants? No argument can be raised against the several liability of the owners, that may not be urged with more force against the liability of the occupant. It is just therefore to infer, that if the occupant who may, or may not be an owner, can be made a respondent in this process, those who confess themselves in the pleadings, to be owners, may be held to answer. The fact that the respondents are tenants in common of the mill, with others not joined in the complaint, does not, in this case, affect the rights of the complainant. He has still his election to complain of one, some, or all of the owners. 14 Johns. 426.

The 7th section of the act in question provides, that a copy

of the complaint shall be served on the person complained of, &c. The 9th sec. says, the owner or occupant may appear and plead, &c., and the words, owner or occupant, are uniformly used to designate the party complained of. There is nothing in the language of the statute to warrant the inference, that all the owners must be made respondents. And in view of the facts that they were severally liable at common law; that their several liability was not the mischief which the statute seeks to remedy ; that the statute regulations do not change the nature of the act complained of; that no unnecessary innovation upon the common law can be presumed ; and that the innovation contended for, is not only unnecessary, but injurious to both parties ; it is difficult to perceive on what grounds it can be maintained, that the respondents in this complaint, who acknowledge their ownership, should not be held to answer.

*Eastman,* for the respondents.

This complaint is made against Jeremiah Baker and Silvanus Blanchard, as tenants in common of a grist mill and dam.

The counsel for the complainant says, that, at common law, if a mill owner, by his dam, overflows and injures the land of another, the injured party might recover his damages by an action, in form *ex delicto.* And if there were several mill owners, he had his election, to sue all, or any one or more of them, jointly or separately ; and that the mischief, to be remedied, was, the multiplicity of suits, to which the owners of mills were subjected, for recovery of damages ; that the remedy provided by the statute was, the substitution of the process by complaint, for the suit at common law ; and that, the true reason of the remedy was, the encouragement of mills. All this we admit. But when he says, the *several liability* of the joint owners of mills was not a mischief to be remedied, we dissent from his opinion. The preamble to the colonial act of 1714, c. 111, recites generally, that it was intended for the " prevention of controversies and lawsuits for the future," in relation to damages by flowing. The preamble to stat. 1796, c. 74, recites, that " the erection and support of mills, to accommodate the in-

habitants of the several parts of the State, ought not to be discouraged by many doubts and disputes." In *Stowell* v. *Flagg*, 11 Mass. R. 364, the court say, the statute was " made expressly to relieve mill owners from the difficulties and disputes they were before subject to ; there can be no doubt of the intention of the legislature to take away the common law action, which might be renewed for every new injury ; and so, burthen the owner of a mill with continual lawsuits and expenses." A principal object of the statute, then, was to prevent a multiplicity of lawsuits. But the counsel for the complainant says, it was only intended to prevent the multiplicity, by succession, for successive injuries ; and not a multiplicity of suits for the same injury, if there should chance to be a multiplicity of owners, causing the injury.

In the present case, there are four owners. The counsel for the complainant says, he has the right to file a separate complaint against each. Here, then, are four separate and distinct complaints. Upon each complaint, a separate committee is appointed. Each committee goes out separately, and makes its several estimate of the damages, and makes return thereof into Court ; and judgment is rendered upon each. Thus, we have a fourfold assessment and recovery of the damages for past injuries, with a bill of costs to each, aggravated by the heavy expenses of the view, with four distinct appraisals of the yearly damages, to serve as the basis of future claims. Perhaps no two estimates will be alike. If so, which shall be taken ? Or, shall the owners be compelled to pay the aggregate of the whole ? Or, will the Court assess the average of the *several* estimates ? On the principle contended for, by the complainant, if there be fifty, or a hundred owners of a mill, each one would be liable to a separate complaint, with all these absurd consequences.

At common law, not only the owners of the dam, but all those employed as laborers, or otherwise, in erecting or maintaining the dam, were liable to separate suits ; but the statute remedy lies only against the owners or occupants. Here, then, is another innovation upon the course of the common law.

The position assumed by the counsel for the complainant, that the statute was made to prevent the multiplicity of suits, will be most effectually sustained, and with the least injury, and with the greatest benefit, to all, by the construction contended for by us.

But, the prevention of a multiplicity of suits, by substituting the process by complaint, was not the only object of the statute. By the common law, such a dam was a nuisance, which the owner of the land flowed, might cause to be abated; or, which he might tear away, without process of law; so that, even a submission to a multiplicity of suits would not enable the mill owner to sustain his dam. And, one prominen tobject of the statute was, to give to the mill owner an indefeasible right, to maintain his dam, notwithstanding it might overflow and injure the land of others. The Provincial act of 1714, after a preamble, reciting, " Whereas, it hath been found by experience, that, when some persons in the Province have been at great cost and expenses for building of mills serviceable for the public good and benefit of the town, or considerable neighborhood, in or near to which they have been erected," and have been subjected to lawsuits, in consequence of flowing lands of other persons, it is enacted, that the owner or owners of such mills " shall have free liberty to continue and improve such pond, for their best advantage, without molestation." The act then provides for the appraisal and payment of the damages, in manner similar to our present statute.

So, the act of 1796, c. 74, after reciting, " Whereas the erection and support of mills, to accommodate the inhabitants of the several parts of the State, ought not to be discouraged by many doubts and disputes," provides, that " it shall be lawful for the owner or occupant of a mill, the dam of which flows the land of other persons, " to continue the same head of water to his best advantage, in the manner, and on the terms hereinafter mentioned." And the act then provides for the appraisal and payment of damages, as under the present statute.

Our Revised Statutes, c. 126, § 1, say, " Any man may erect

and maintain a water mill, and a dam to raise water for working it, upon and across any stream, that is not navigable, upon the terms and conditions, and subject to the regulations hereinafter expressed."

In *Tinkham* v. *Arnold*, 3 Greenl. 120, the court speak of this privilege of flowing, as, a "license given by law," "a license given by the statute," and say, "where a man has a legal right, which is disclosed to the court, he shall not be received to say, he holds by wrong." The same idea is brought to view, in *Hathorne* v. *Stinson*, 3 Fairf. 183.

The counsel for the complainant says, the statute "allows an act to be done, which is, in its nature, a tort, under certain conditions and restrictions; subject to which it may well be denominated a regulated tort. And when done by several persons, jointly, it should be regarded, in practice, as well the several act of each individual, as the joint act of all." His inference from this position is, that the several remedy remains, under the statute, as in all cases of tort, at common law, against each of the tort-feasors.

But we deny the correctness of his position. We say, that, at common law, a mill owner, flowing the land of another, by means of his dam, was guilty of a wrong; but, under the statute, the same act becomes a matter of right. Its legal nature is changed. The statute gives him "free liberty." He has as perfect authority, so far as the act itself is concerned, to flow the land of another, as to flow his own. His obligation to pay the damages, does not affect the question of mere right. *Charles* v. *Monson & Brimfield Manuf. Co.*, 17 Pick. 70. The statute expressly takes away the right to sue at common law, and the substituted process does not in any degree partake of the nature of a remedy for a tort.

By Rev. Stat. c. 126, § 20, after an appraisal of the damages by a committee on a complaint, debt or assumpsit is prescribed as the action to enforce payment of the yearly damages. This circumstance clearly indicates the legal character of the act. Under the statute, that which before was a tort, becomes a contract. The law says, you have the right

to flow your neighbor's land; but, in the exercise of that right, you impliedly promise to pay him the damage he sustains. The performance of that promise is to be enforced, in the first instance, by complaint, and a committee to estimate the amount — and, subsequently, by action of assumpsit. Instead, therefore, of being a "regulated tort," it becomes a statute contract, and, to be enforced, under rules adapted to other contracts.

That the statute did take from the complainant a common law right is freely conceded. It was the express design of the statute to abridge the "common law right" to harass the mill owner with a multiplicity of suits; but, it substitutes a mode of redress, plain and simple, by which he can obtain full indemnity, with much greater certainty, than by suit at common law; and, by which he can have the whole matter settled and put to rest, as to past, present, and future damages, at a single trial. He has also ample security for payment, in the lien, which the statute gives him, upon the mill and dam. We do not perceive any hardship in this. He may, at his election, commence his process against "the occupant," as such — the man, who is openly and visibly in possession; or, against the owner, if but one, or against all the owners, if there be several; and it will be sustained. In either case, the lien is his security for payment. In what respect, does he lose "a common law right, highly beneficial?"

In all other cases, it is regarded as a fundamental maxim in the administration of justice, that no adjudication shall be made, upon a person's rights, without notice, and an opportunity to be heard. *Gordon* v. *Hobart & al.* 2 Sumner, 407.

That the rights of all the mill owners are involved in the adjudication, even where the complaint is prosecuted only against one part owner, is obvious.

By § 19, of the statute, a lien is given to the complainant on the mill, mill dam, appurtenances, and lands, for the amount, which he may recover. By § 20, he may maintain an action of debt or assumpsit, based upon the adjudication, against the person who shall own or occupy the mill when he shall bring

such action. In such action against all the owners, the adjudication, as to the yearly damages, is conclusive, and cannot be impeached, though the original complaint was only against one. By § 21, having obtained judgment, whether on the original complaint, or in such subsequent action for the yearly damages, he may levy his execution upon the mill and premises, so subject to the lien, and sell it at auction. *Lowell* v. *Shaw,* 15 Maine R. 242 ; *Jones* v. *Pierce,* 16 Maine R. 411.

The counsel for the complainant, in support of his position, cites *Low* v. *Munford,* 14 Johns. 426. That was not a complaint under the statute, but an action at common law, for flowing, in form *ex delicto,* as for a tort. It was decided upon common law principles, perfectly familiar — and, being a case entirely different from the present, can have no influence in the decision of the present question. It is not disputed, that at common law, an action could have been maintained against any one or more, without joining the whole.

In cases of flowage, under the statute, the mere act of flowing will not sustain the complaint ; — it must appear, that there is actual damage, which the mill owners ought to pay ; — and it is for this neglect to pay — an omission — a *non feasance,* in regard to a duty imposed by the statute — a duty, arising out of the joint ownership of the dam — and the joint act of the owners, in building the dam, that the complaint can be sustained. The duty of paying, implied and imposed by the statute, is equally incumbent upon all, and it would seem that all ought to be joined in the complaint.

In *Converse* v. *Simmes,* 10 Mass. R. 377, the court distinctly recognize the right of an owner of part of a mill, to have his partners joined in a complaint for flowing ; and strongly intimate, that the non-joinder may be taken advantage of, in abatement.

If the principle contended for by the counsel for the complainant be correct, it would involve many unequal and unjust, not to say, absurd, consequences : Thus — in case of a complaint, and judgment, against one of several owners, as in the present case, if he were compelled to pay the whole damage,

the statute gives him no authority to call upon the others, to pay their proportion. Whereas, if it were a joint judgment against all, and payment was enforced against one, he could call upon the others for contribution.

So, a part of the mill owners might induce the owner of the land to prefer his complaint against the other owners alone, and so compel them to pay the whole damages without the power of calling upon them to contribute.

So, in case of a complaint against a single owner, he might consent to an assessment of damages enormously high, with a secret understanding, that it should be enforced only against his co-tenants; and the lien upon the mill would enable the complainant to enforce payment against them.

So, under the provisions of § 31, one part owner might agree as to the amount of the damages to be paid; and, if the principle contended for by the complainant's counsel be correct, all the other mill owners will be bound by it.

*Freeman*, in reply, among other things, said, that the mill owner virtually disseizes the land owner. It may be that he can plead a statute in justification. But he can plead in bar to the land owner's process, that he disseized him not alone, but jointly with others. The owner of the land is not bound to know by how many his rights have been invaded.

The right to file a separate process against each of the co-tenants of a mill is not contended for. The position is, that the complainant, for the purpose of obtaining commissioners to estimate his damages, has a right to pray the court to issue a summons to any one or more of the owners or occupants of the mill complained of, " so describing the land and stating the damage, that the record of the case may show with sufficient certainty the matter that shall have been heard and determined therein." And if more than one complaint should be filed for the same cause of action, the ninth section of the statute allows the respondent to plead in bar to the same.

It was the design of the legislature to grant to mill owners the privilege of keeping up their dams, whenever in the judgment of the commissioners the injury to the lands flowed should

be so small in comparison to the benefit resulting to the mill owners from keeping up the head of water to the height causing the flowage, that the granting of this license should on the whole be deemed " serviceable for the public good." But this must depend upon the circumstances of each case. The mill owner must take the right to flow the land of others subject to the provisions and conditions of the statute.

The process lies against an occupant of a mill, who is not an owner, and all the difficulties, and more, would then exist, which have been urged for the respondents, when the process has been brought against a part owner. The rights of the mill owners are determined by such process against the occupant. And when the process is against an occupant or part owner, either may call on the owners, or other part owners, of the mill for their respective proportions of the damages. And was so holden by the Court in the case of *Lowell* v. *Shaw*, cited for the respondents. The statute does not require, or imply, that the process should be brought against all the co-tenants of the mill and dam causing the flowage.

The opinion of the Court was drawn up by

WHITMAN C. J. This is an application under the Rev. Stat. c. 126. The respondents plead in abatement, that there are other owners, of the mill dam complained .of, who are not named in the application ; and to this the applicant demurs. The truth of the allegation in the plea, that there were other owners of the dam not named in the application, is, therefore admitted. And the question from thence arising, is, was it essential that the other owners should have been joined with the respondents in the application.

In an action at common law, for injuries arising from the reflux of waters, occasioned by the erection of mill dams, such a plea could not be sustained. But by the statute the action at common law, except under particular circumstances, is abolished. There is now no remedy for an individual, so injured, except it be under the statute, or when mill owners fail to comply with its provisions. The mill owners, in the first

Hill *v.* Baker.

instance, are empowered to flow the lands of others. Any restriction or regulation of the flowage must be obtained on application of the party injured. The mill owners, therefore, in flowing the lands of others, are not originally tort feasors. The process authorized against them is not as tort feasors, but is rather in the nature of a bill in equity, to obtain redress for the injury occasioned by the flowage ; and to obtain that, which is in effect an injunction against an unreasonable exercise of the right of flowage. It is manifest in such case, that all the parties in interest should be before the court. The statute seems clearly to contemplate that such should be the case. The rights of all those interested in the dam are to be affected. The applicant is to have a lien, from the time of his application, upon the dam, mill and privileges ( § 19) for his damages. The restrictions upon flowage are to affect all the owners alike. It would be impracticable to regulate it otherwise. If judgment be obtained, in a suit, and execution be thereon issued, for the damages awarded (§ 21) it may be levied upon the whole of the dam, mill and privilege by a sale at auction. It is one of the first principles in administering justice, that the rights of no one shall be affected without an opportunity to be heard in his defence. All the owners of the mill and dam, therefore, should be before the court, before any proceeding should be had against them.

It is true that it may be difficult in some instances, to ascertain who the owners of a mill privilege are. But this is a difficulty similar to what occurs in actions of assumpsit at common law, in many cases, the inconvenience in which has been provided against recently by statute ; and the legislature may see fit to apply a similar remedy in cases of flowage.

*Plea in abatement adjudged good—*
*Application dismissed.*